ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| JOSÉ RUIZ VEGA; YARITZA HERNÁNDEZ NIEVES, POR SÍ Y EN REPRESENTACIÓN DE LA CLASE<br><br>Apelantes<br><br>V.<br><br>BEST BUY STORES PUERTO RICO, LLC; DEPARTAMENTO DE HACIENDA DE PUERTO RICO P/C DE SU SECRETARIO HON. FRANCISCO PARÉS ALICEA; ESTADO LIBRE ASOCIADO DE PUERTO RICO P/C DE SU SECRETARIO, HON. DOMINGO EMANUELLI HERNÁNDEZ NIEVES; y OTROS<br><br>Apelados | KLAN202400428 | *APELACIÓN* procedente del Tribunal de Primera Instancia Sala de San Juan<br><br>Caso Núm. SJ2019CV11920<br><br>Sobre:<br><br>Pleito de Clase; Sentencia Declaratoria; Interdicto Permanente; Cobro de lo Indebido |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Ronda Del Toro y la Jueza Díaz Rivera

**Ronda Del Toro, Juez Ponente**

# SENTENCIA

En San Juan, Puerto Rico, a 28 de junio de 2024.

José E. Ruiz Vega (señor Ruiz Vega) y Yaritza Hernández Nieves (señora Hernández Nieves) o en conjunto "apelantes", nos solicitan que revisemos y revoquemos la *Sentencia* emitida el 12 de enero de 2024 y notificada el 16 de enero, por el Tribunal de Primera Instancia (TPI), Sala Superior de San Juan. Mediante referido dictamen, el TPI declaró *Ha Lugar* la *Moción para que se ordene a los demandantes a someter sus reclamaciones al procedimiento de arbitraje y solicitud de paralización* que presentó

Número Identificador

SEN2024 _____

Best Buy y por consiguiente desestimó la demanda incoada por el señor Ruiz Vega y la señora Hernández Nieves.

Por los fundamentos que se exponen a continuación, *confirmamos la Sentencia apelada*.

**I.**

El 15 de noviembre de 2019, José E. Ruiz Vega y Yaritza Hernández Nieves presentaron una *Demanda* en contra de Best Buy y otros.

Luego de ciertos trámites procesales, entre ellos, Best Buy acudió al Tribunal de Apelaciones en la causa KLCE202300550, el 26 de abril de 2023 los demandantes Ruiz Vega y Hernández Nieves enmendaron la demanda para incluir al Departamento de Hacienda de Puerto Rico. En su reclamación, en síntesis, alegaron que compraron cierta mercancía en Best Buy, le adquirieron unas garantías extendidas y Best Buy les cobró el impuesto sobre ventas y uso (IVU). Señalaron que, conforme al Código de Rentas Internas para un Nuevo Puerto Rico, las compras de garantías extendidas están expresamente excluidas de tributar el IVU. Solicitaron la certificación del caso como un pleito de clases, que se declare la ilegalidad del cobro del IVU, que se les devuelva los pagos realizados por IVU sobre las garantías adquiridas, más una compensación del doble de lo pagado por ese concepto, más las costas, gastos y el interés legal, así como el pago de honorarios de abogado.

El 16 de mayo de 2023 Best Buy contestó la demanda enmendada. En esencia, aceptaron que le cobraron al señor Ruiz Vega la suma de $36.80 por concepto de IVU sobre un Plan de Servicio que adquirió para una computadora. De igual forma, asintieron que le cobraron $5.75 de IVU a la señora Hernández Nieves Nieves sobre un Plan de Servicios para un televisor que

esta adquirió en la tienda.  Como defensas afirmativas alegaron, entre otras, que el Tribunal carecía de jurisdicción sobre la materia por existir remedios administrativos para el reintegro del IVU. Agregaron que, los demandantes, como miembros del programa *My Best Buy Loyalty* estaban obligados por una cláusula de arbitraje mediante la cual acordaron someter todas las disputas contra Best Buy a arbitraje.[1]

El 27 de junio de 2023 el Departamento de Hacienda contestó la *Demanda Enmendada.*[2]

Entretanto, el 30 de junio de 2023, según adelantamos, este foro apelativo intermedio emitió una Resolución en la causa KLCE202300550.  En ese recurso Best Buy nos había solicitado la revocación de la *Resolución* emitida el 11 de abril de 2023 y notificada el 13 de abril de 2023, mediante la cual el TPI declaró *No Ha Lugar* la *Moción de Desestimación* que estos presentaron.  La determinación de este foro revisor fue denegar expedir el auto de *certiorari*.[3]  Tras ser denegada la solicitud de reconsideración, el 29 de agosto de 2023 Best Buy acudió al Tribunal Supremo mediante recurso de Certiorari, junto a una Moción en Auxilio de Jurisdicción en la causa asignada al CC-2023-0570.[4]  El Tribunal Supremo declaró No Ha Lugar ambos petitorios.[5]

Entretanto, el 28 de julio de 2023 Best Buy había presentado una *Moción para que se ordene a los demandantes a someter sus reclamaciones al procedimiento de resolución de disputas pactado y solicitud de paralización de los procedimientos.*

---

[1] Apéndice de la apelación págs. 185-191.
[2] Apéndice de la apelación págs. 192-201.
[3] Tomamos conocimiento del KLCE202300550.
[4] Expediente electrónico de Sistema Unificado de Manejo y Administración de Casos (SUMAC) anejo de la entrada 91.
[5] Recurso de Apelación, página 9, párrafo 30.

En síntesis, reiteraron que la señora Hernández Nieves y el señor Ruiz Vega se suscribieron al Programa de Lealtad el 20 de agosto de 2013 y el 29 de noviembre de 2013, respectivamente. Indicaron que los términos y condiciones de ese programa disponían, en esencia, que, si surgía alguna disputa con Best Buy que no se podía resolver mediante negociación, se acudiría al proceso de arbitraje. Agregaron que la relación contractual bajo el Programa de Lealtad, que comenzó en el año 2013, ha continuado ininterrumpidamente, por lo que, estaba vigente al momento de presentar la Demanda el 15 de noviembre de 2019. Tras ello, le solicitaron al foro primario, entre otros, decretar el cierre y archivo del caso y ordenarle al señor Ruiz Vega y la señora Hernández Nieves a dilucidar sus controversias mediante el procedimiento de resolución de disputas pactado, más las costas y honorarios de abogado[6].

Ese mismo día, 28 de julio, Best Buy presentó una *Moción para que se paralice el descubrimiento de prueba y se deje en suspenso la vista de certificación de clase mientras el tribunal resuelve la moción para compeler al arbitraje*.[7] Mientras, el 10 de agosto de 2023 también presentó una *Moción Informativa Sobre Notificación de Interrogatorios y Requerimiento de Producción de Documentos en Preparación Para la Vista de Certificación*.[8]

Por su parte, el 15 de agosto de 2023 los demandantes presentaron una *Oposición a Moción Solicitando Orden para Compeler a Arbitraje y Sobre Paralización de los Procedimientos.* En suma, alegaron que la cláusula de arbitraje no tenía el alcance que Best Buy pretendía, pues solo le aplicaba a cierto programa

---

[6] SUMAC, entrada 64.
[7] Apéndice pág. 286.
[8] Alegato de Best Buy, apéndice págs. 13-14.

de nombre "lealtad", no aplicable a una controversia en torno al cobro ilegal de un IVU. Entienden que la cláusula de arbitraje se refiere únicamente a disputas relacionadas a cierto programa que la demandada les ofrece a sus clientes referente a productos o servicios que nada tienen que ver con este caso. Adujeron, a su vez, que Best Buy renunció a cualquier proceso de arbitraje en este caso por haber litigado activamente el caso en el tribunal durante varios años.

El 7 de septiembre de 2023, notificada el siguiente día, el Tribunal dictó una Orden mediante la cual dejó sin efecto el señalamiento pautado para el 13 de septiembre de 2023, para la celebración de vista de certificación de clase, hasta tanto se resolviera la solicitud para compeler a arbitraje por ser la falta de jurisdicción una cuestión de umbral. En referida orden también dejó en suspenso todo esfuerzo del descubrimiento de pruebas.[9]

El 8 de septiembre de 2023 las partes rindieron el *Informe al amparo de la Regla 37.1 de Procedimiento Civil en cumplimiento con lo ordenado*.[10]

El 27 de septiembre de 2023 Best Buy presentó una moción de *Réplica a la "Oposición a Moción solicitando orden para compeler a arbitraje y sobre paralización de los procedimientos*." En respuesta, el 17 de octubre de 2023 los señores Ruiz Vega y Hernández Nieves presentaron una *Dúplica a Réplica*. A ese documento anejaron la Moción en auxilio de jurisdicción presentada por Best Buy en el Tribunal Supremo el 29 de agosto de 2023.

El 31 de octubre de 2023 Best Buy interpuso una *Solicitud de Vista Argumentativa* ante los argumentos del demandante

---

[9] Alegato de Best Buy, apéndice, págs. 15-17.
[10] Alegato de Best Buy, apéndice, págs. 18-35.

relacionados a la dúplica que sometió para oponerse a que el caso continuase en arbitraje.[11] El foro primario denegó la vista pues el asunto estaba sometido par la determinación correspondiente.[12]

Trabada la controversia, el 12 de enero, notificada el 16 de enero de 2024, el tribunal de instancia dictó sentencia mediante la cual decretó desestimar la demanda para que las reclamaciones continuaran en el procedimiento de arbitraje. Como hechos no controvertidos, incluyó los siguientes:

[……..]

4. Best Buy se dedica primordialmente a la venta de enseres electrodomésticos y eléctricos y actualmente cuenta con tres tiendas en Puerto Rico, ubicadas en Hato Rey, Bayamón y Carolina.

5. Best Buy ofrece un programa llamado My Best Buy mediante el cual le otorga a sus miembros ciertos beneficios incluyendo, pero no limitándose a lo siguiente: (1) Envío gratuito de productos por correo; (2) Precios exclusivos; (3) Acceso exclusivo a determinadas ventas, eventos y productos (3) Periodo extendido de sesenta días para la devolución de productos; (4) Planes de protección para los productos incluyendo el "AppleCare+"; (5) Apoyo técnico las veinticuatro horas del día, y (6) Apoyo VIP por ser miembro.

6. El programa contiene una sección titulada "Dispute resolution by binding individual arbitration", la cual dispone que:

ANY DISPUTE INVOLVING YOU AND BEST BUY OR ANY OF ITS AGENTS MUST BE RESOLVED THROUGH INDIVIDUAL ARBITRATION, EXCEPT AS FOLLOWS

"Dispute" **shall be interpreted broadly and cover any claim or controversy arising out of or relating in any way whatsoever to your relationship or interaction with Best Buy**, its agents, and its present and future subsidiaries, affiliates, and designees – including, but not limited to, GreatCall, Lively™, Geek Squad®, Magnolia®, and Pacific Sales® – whether based in contract, tort, statute, fraud, misrepresentation, or any other legal theory. Examples of relationships or interactions giving rise to a covered claim include, without limitation: (1) your use of Best Buy's websites; (2) your membership in any Best Buy loyalty or rewards

---

[11] Alegato de Best Buy, apéndice, págs. 36-38.
[12] Alegato de Best Buy, apéndice, págs. 39-40.

program (e.g., My Best Buy®) or subscription-based services (e.g., Best Buy Totaltech™); (3) your receipt of delivery, repair or installation services or consultation services provided by Best Buy or its agents; (4) any communications between you and Best Buy; (5) application for financing; and/or (6) your purchase of products or services offered, sold, or distributed by Best Buy including, but not limited to, any Dispute arising from the advertising of, or the sales practices related to, such products and services. If you are a My Best Buy® member, Dispute shall also include all disputes that arose before your enrollment in, and after the cancellation or termination of, the My Best Buy® program, including any claims that are the subject of a purported class action litigation.

7. Best Buy ofrece un plan de protección llamado Geek Squad Protection, cuya descripción se incluye a continuación: "This plan provides parts and labor protection for your purchase. It's designed to guarantee performance with added benefits that go above and beyond the manufacturer's warranty."

8. El 30 de octubre de 2015, el Sr. Ruiz Vega compró una computadora en la tienda de Best Buy ubicada en Hato Rey y, a su vez adquirió el Geek Squad Protection Plan por $319.99, más se le cobró el IVU por una suma adicional de $36.80.

9. El 26 de septiembre de 2019, la Sra. Hernández Nieves compró un televisor en la tienda de Best Buy ubicado en Hato Rey y, a su vez adquirió el Geek Squad Protection Plan por $49.99, más se le cobró el IVU por una suma adicional de $5.75[13].

El foro primario evaluó el derecho relacionado al arbitraje, a la jurisdicción, a la renuncia o "waiver" al procedimiento de arbitraje. Tras ello, razonó que "la esencia de la reclamación del Sr. Ruiz Vega y de la Sra. Hernández Nieves no requiere especialidad en el asunto, ni de un nivel de peritaje particular para ser atendida, pues meramente versa sobre si el Geek Squad Protection es considerada o no una garantía extendida, excluida de tributar el IVU en virtud de la Sección 4010.01 del Código de Rentas Internas, *supra*. El aspecto técnico y especializado entraría en operación por el Departamento de Hacienda, en su

---

[13] Notas al calce omitidas.

momento, en el supuesto de que la Parte Demandante resulte vencedora en su causa de acción." Mas adelante, concluyó que, "el lenguaje amplio de la cláusula de arbitraje contenida en el programa My Best Buy provee para que la disputa de autos sea sometida al procedimiento de arbitraje." Agregó que, "habiéndose pactado de antemano en el contrato de My Best Buy, lo correcto es desestimar la presente reclamación por falta de jurisdicción y ordenar que se presente ante un árbitro." Con lo anterior decretó desestimar la reclamación.

En desacuerdo, el 31 de enero de 2024 los señores Ruiz Vega y Hernández Nieves solicitaron reconsideración y Best Buy se opuso. Luego de otros escritos, el 5 de marzo de 2024, el TPI declinó reconsiderar.

Aun insatisfechos, Ruiz Vega y Hernández Nieves acudieron a este foro apelativo y alegan que incidió el TPI:

> Primero: Al no determinar que Best Buy renunció a un alegado derecho de arbitraje cuando incurrió en una conducta inconsistente y contraria a dicho reclamo con su proceder afirmativo durante el trámite judicial en instancia así como en los recursos apelativos instados y al presentar, luego de su solicitud para compeler al arbitraje, una moción en auxilio de jurisdicción ante el Tribunal Supremo para paralizar todo incidente ante el TPI para que, en su lugar, se atienda un recurso de certiorari ante dicho foro.

> Segundo: al dictar sentencia desestimando la demanda enmendada para que se canalice la controversia en arbitraje al utilizar como base para su decisión, una cuarta enmienda unilateral hecha por Best Buy a cierta cláusula de arbitraje, cuya enmienda se realizó más de 3 años después de incoada la demanda de autos, y aplicarla retroactivamente y que además no abarca la única controversia del presente caso consistente en el cobro ilegal del IVU sobre garantías extendidas.

Best Buy y el Departamento de Hacienda, por conducto de la Oficina del Procurador General de Puerto Rico, presentaron su alegato en oposición. Ambos solicitaron que se confirme la

sentencia que emitió el TPI mediante la cual decretó la desestimación de todas las alegaciones. Con el beneficio los escritos, disponemos.

## II.

## A.

Nuestro ordenamiento jurídico hace asequible que las partes en un contrato se obliguen a llevar ante un árbitro, mediante un procedimiento de **arbitraje**, las posibles controversias futuras relacionadas con su contrato. S.L.G. Méndez-Acevedo v. Nieves Rivera, 179 DPR 359, 366 (2010).

Esa facultad surge principalmente de la Ley Núm. 376 de 8 de mayo de 1951, según enmendada, conocida como Ley de Arbitraje de Puerto Rico, 32 LPRA sec. 3201 *et seq,* que en el Artículo 1, dispone como sigue:

> Dos o más partes podrán convenir por escrito en someter a arbitraje, de conformidad con las disposiciones de esta Ley, cualquier controversia que pudiera ser objeto de una acción existente entre ellos a la fecha del convenio de someter a arbitraje; o podrán incluir en un convenio por escrito una disposición para el arreglo mediante arbitraje de cualquier controversia que en el futuro surgiere entre ellos de dicho acuerdo o en relación con el mismo. Tal convenio será válido, exigible, e irrevocable salvo por los fundamentos que existieran en derecho para la revocación de cualquier convenio.

32 LPRA sec. 3201.

Conforme el Art. 1 de la Ley de Arbitraje, *supra*, el arbitraje es una figura inherentemente contractual que se puede exigir cuando se ha pactado y ello consta por escrito. Constructora Estelar v. Aut. Edif. Pub., 183 DPR 1, 32 (2011); Municipio Mayagüez v. Lebrón, 167 DPR 713, 720 (2006). Crufon v. Aut. Edif. Púbs., 156 DPR 197 (2002); UCPR v. Triangle Engineering Corp., 136 DPR 133, 144 (1994); véase, además, Aponte Valentín et al. v. Pfizer Pharm, 208 DPR 263, 282 (2021).

En ese sentido, una de las controversias que las partes tienen el derecho a dirimir ante los tribunales, es aquella relacionada a la obligación de arbitrar. Art. 4 de la Ley Núm. 376 32 LPRA sec. 3204; S.L.G. Méndez-Acevedo v. Nieves Rivera, *supra*, pág. 367. Para dilucidar lo anterior, se ha determinado que tal controversia incluye tres modalidades, a saber: (i) si existe un convenio de arbitraje; (ii) si ese convenio alcanza determinada controversia, y (iii) si el convenio alcanza una disputa sobre la duración o expiración del contrato. Aponte Valentín et al. v. Pfizer Pharm*, supra*; S.L.G. Méndez-Acevedo v. Nieves Rivera, *supra*, pág. 368.

Así pues, si se cuestiona directamente la validez de un acuerdo arbitral, corresponde a los tribunales dilucidar el asunto. Aponte Valentín et al. v. Pfizer Pharm*, supra;* S.L.G. Méndez-Acevedo v. Nieves Rivera, *supra*, págs. 374–376; Buckeye Check Cashing, Inc. v. Cardegna, 546 US 440, 445–446 (2006). Esto es, "la determinación de si un acuerdo crea el deber de arbitrar una controversia en particular entre las partes es tarea judicial". Aponte Valentín et al. v. Pfizer Pharm*, supra;* S.L.G. Méndez-Acevedo v. Nieves Rivera, supra, pág. 367.

Al existir una fuerte política pública a favor del arbitraje, se ha reconocido que toda duda que pueda existir sobre si procede o no el arbitraje debe resolverse a favor de este. S.L.G. Méndez-Acevedo v. Nieves Rivera, *supra*, págs. 368, véase, además, Constructora Estelar v. Aut. Edif. Pub., *supra*, pág. 30. El Tribunal Supremo ha afirmado que, "ante un convenio de arbitraje lo prudencial es la abstención judicial, aunque esa intervención no esté vedada". S.L.G. Méndez-Acevedo v. Nieves Rivera, *supra*, pág. 368; Municipio Mayagüez v. Lebrón, 167 DPR 713, 721 (2006); UCPR v. Triangle Engineering Corp., 136 DPR 133, 142

(1994). Por eso, una vez acordado el arbitraje, los tribunales carecen de discreción respecto a su eficacia y tienen que dar cumplimiento al arbitraje acordado. S.L.G. Méndez-Acevedo v. Nieves Rivera, *supra*, Municipio Mayagüez v. Lebrón, *supra*, pág. 721; Cone Mem. Hosp. v. Mercury Constr. Corp., 460 US 1, 24 (1983). Así, el arbitraje constituye un medio más apropiado y deseable que los tribunales para la resolución de controversias que emanan de la relación contractual entre las partes, ya que es menos técnico, más flexible y menos oneroso. H.R., Inc. v. Vissepó & Diez Constr, 190 DPR 597, 606 (2014); Pérez v. Autoridad Fuentes Fluviales, 87 DPR 118, 127 (1963).

**B.**

De otro lado, las partes que voluntariamente se someten a un procedimiento de arbitraje deben agotar los remedios contractuales antes de acudir a los tribunales, salvo que exista justa causa para obviarlos. H.R., Inc. v. Vissepó & Diez Constr, *supra*, pág. 606; Vélez v. Serv. Legales de P.R., Inc., 144 DPR 673 (1998).

El Tribunal Supremo de Puerto Rico ha reconocido limitadas excepciones a la regla del cumplimiento previo de la obligación de arbitrar, entre ellas, cuando las partes renuncian voluntariamente a ese derecho. H.R., Inc. v. Vissepó & Diez Constr, *supra.*

Aun así, el foro supremo destacó que*,* "[e]l peso de establecer tal renuncia recae sobre el interventor. Existe una política vigorosa en favor del arbitraje y una marcada renuencia de los tribunales en concluir que se ha incurrido en una renuncia del derecho de arbitraje. Toda duda que pueda existir debe ser resuelta a favor del arbitraje". (Cita omitida) H.R., Inc. v. Vissepó & Diez Constr, *supra*, págs. 606-607*.*

Por otro lado, en ocasiones los tribunales debemos dejar sin efecto la cláusula de arbitraje, a pesar de ser válida, porque la parte que reclama el derecho a arbitraje ha actuado inconsistentemente con este reclamo. H.R., Inc. v. Vissepó & Díez Constr, *supra*, pág. 608. Ejemplo de ello es cuando un demandado, conociendo su derecho a arbitrar, decide ignorar este derecho y participar activamente en el litigio en los tribunales. H.R., Inc. v. Vissepó & Diez Constr, *supra*, págs. 608-609.

Ahora bien, el Tribunal Supremo de Puerto Rico ha reafirmado que las actuaciones de un peticionario no constituyen una renuncia de su derecho de arbitraje cuando en la primera alegación en el caso se invocó tal derecho y solicitó la suspensión de los procedimientos hasta que se procediese al arbitraje pactado en el contrato. Véase H.R., Inc. v. Vissepó & Diez Constr, *supra*, pág. 608*.* Así pues, cuando las partes pactan el arbitraje y este derecho se reclama en la primera alegación responsiva, lo que procede es detener los procedimientos ante el tribunal y someter el asunto a arbitraje. Id*.*

En H.R., Inc. v. Vissepó & Diez Constr, *supra,* el Tribunal Supremo adoptó el escrutinio de la jurisdicción de Nueva York, en Tengtu Intl. Corp. v. Pak Kwan Cheung, 24 A.D.3d 170, 172 (2005), mediante la cual el Tribunal Supremo estatal consideró que "el factor determinante al momento de tomar la decisión es el tipo de participación del litigante en el proceso en corte." Allí ese tribunal hizo una distinción entre la litigación defensiva y la afirmativa. Si el litigante invoca el proceso judicial defensivamente, no se entiende renunciado el derecho de arbitraje; por otra parte, si el litigante utiliza el sistema judicial de manera afirmativa, se infiere que se ha renunciado al derecho a arbitraje. Véase, H.R., Inc. v. Vissepó & Diez Constr*, supra*, pág.

611.   Se entiende que se invoca afirmativamente el proceso judicial cuando el litigante solicita de forma fehaciente los beneficios de la litigación, actuación que resulta incompatible con su posterior reclamo de arbitraje.  Id.

En cuanto a la litigación defensiva y afirmativa, el Tribunal Supremo, aludió a lo siguiente:

> Por otra parte, se entiende que se utiliza defensivamente el proceso judicial cuando el demandado solo interactúa con el sistema judicial para atender una acción en su contra. A modo de ejemplo, y sin pretender hacer un listado exhaustivo, se considera que el demandado actúa defensivamente siempre que contesta los requerimientos del demandante, sin cursar requerimiento alguno por su parte, o cuando simplemente da estricto cumplimiento a las órdenes del tribunal.
>
> De igual forma, no se renuncia al derecho de arbitraje en aquellas situaciones en las cuales existe una necesidad urgente de preservar el statu quo y se requiere una acción inmediata que no puede esperar por el nombramiento de un árbitro; entiéndase, aquellos recursos interdictales en los cuales el promovente interesa detener acciones que puedan afectar el statu quo. En estos casos, la presentación del recurso en el sistema judicial no se interpretará como acciones incompatibles con el posterior reclamo de arbitrar. H.R., Inc. v. Vissepó & Diez Constr., supra, pág. 612.

A la luz de todo lo anterior, para determinar si un litigante renunció al derecho de arbitraje por su conducta, el Tribunal Supremo determinó que, "no basta con alegar que la parte demandada no reclamó ese derecho entre las defensas afirmativas. La parte deberá probar además que la parte demandada realizó *actos afirmativos* **sin** reclamar previamente su derecho a arbitraje." (Énfasis nuestro) H.R., Inc. v. Vissepó & Diez Constr., *supra*.   Para que el derecho a arbitrar se entienda renunciado, el demandado deberá, además, haber utilizado afirmativamente el sistema judicial conociendo que tenía un derecho a arbitrar, el cual no reclamó previamente. Sin embargo, ello no impide que los tribunales puedan decretar, por ejemplo,

que debido a la etapa avanzada de los procedimientos, el demandado incurrió en mala fe o incuria al alegar su derecho a arbitraje. Id.

Una vez el caso se somete al arbitraje, la función del árbitro "es análoga a la ejercida por una sala sentenciadora de primera instancia, estando el foro apelativo facultado para *revisar* los planteamientos al respecto." UIL de Ponce v. Dest. Serrallés, Inc., 116 DPR 348, 354 (1985).

## III.

En el primer señalamiento de error los apelantes alegan que Best Buy esperó más de tres años y medio de ser emplazada para traer, por primera vez, la existencia de la cláusula de arbitraje. Indicó que incluso solicitaron la desestimación del pleito porque la jurisdicción primaria era administrativamente del Departamento de Hacienda y este a su vez era parte indispensable. Al no concederse su pedido de desestimación y luego de que se enmendara la demanda para incluir al Departamento de Hacienda como parte indispensable, acudieron al Tribunal de Apelaciones (KLCE202300550) y luego al Tribunal Supremo. Adujo que Best Buy contestó la demanda enmendada y ahí fue que trajo por primera vez el asunto del arbitraje. Mencionó que el TPI en su sentencia no mencionó los actos contradictorios de Best Buy al procedimiento de arbitraje, acto que denotó la renuncia del demandado al proceso de arbitraje. Revisamos.

Como muy bien indica la parte apelante Best Buy planteó la defensa de arbitraje en su primera alegación responsiva cuando contestó la demanda enmendada el 16 de mayo de 2023.[14]

---

[14] Apéndice pág. 190, párrafos 23-24. "Como miembros del programa My Best Buy Loyalty los demandantes están obligados por una cláusula de arbitraje mediante la cual acordaron someter todas las disputas contra Best Buy a arbitraje".

Previo a ello, Best Buy había solicitado la desestimación de la acción, por falta de jurisdicción del foro primario y esta petición fue denegada. Luego, en una decisión posterior del 30 de junio de 2023, en la causa KLCE202300550 este panel denegó la expedición del recurso.

Por tanto, previo a obtener una decisión final de este foro, Best Buy en su primera alegación para responder a la demanda enmendada, aludió al procedimiento de arbitraje. Del tracto procesal no surgen actuaciones ni trámite alguno de Best Buy que demuestre una renuncia implícita al procedimiento de arbitraje.

Mas bien, notamos que la participación de Best Buy, en el trámite legal incoado en su contra y los eventos discurridos durante el litigio, se circunscribió a lo que la jurisprudencia ha identificado como actuaciones defensivas, que no implican la renuncia al arbitraje pactado. El primer error no fue cometido.

En el segundo señalamiento de error, los apelantes alegan que la cláusula de arbitraje y sus posteriores enmiendas no comprenden ni abarcan la controversia sobre el cobro ilegal del IVU. Aducen que las garantías extendidas se rigen por un contrato denominado "Geek Squad Protection", mientras que las cláusulas de arbitraje están contenidas en otro programa de nombre "Programa Lealtad", también denominado como "My Best Buy". Sostuvieron que no hay controversia en cuanto al contrato de garantía extendida, sino que Best Buy les cobró del IVU a la garantía extendida llamada "Geek Squad Protection Plan", asunto que no es arbitrable. Indicaron que los términos y condiciones del programa "My Best Buy" para el año 2013 establecían que la disputa sujeta a arbitraje era "any dispute related to the Program" y que este lenguaje excluye la controversia de este caso. Aseveraron que en la moción para compeler al arbitraje, Best Buy

aludió a la cláusula de arbitraje efectiva mediante enmienda en agosto de 2016, que refiere a arbitraje lo siguiente: "ANY DISPUTE WITH OR CLAIM AGAINST BEST BUY ARISING OUT OF OR RELATING IN ANY WAY TO ANY PRODUCTS OR **SERVICES SOLD** OR DISTRIBUTE BY BEST BUY…".    Señalan que esa enmienda se refiere exclusivamente al programa "My Best Buy".  Sostuvieron que la última enmienda fue efectiva el 14 de febrero de 2023, luego de iniciado este pleito, cuando Best Buy intentó incluir en el arbitraje las controversias de los miembros relacionadas a su interacción con el "Geek Squad".    Arguyen que esta última enmienda fue la que el foro primario utilizó, para darle la razón a Best Buy para compeler al arbitraje y la aplicó de forma retroactiva.

Sobre esta controversia, Best Buy alegó que las disputas en este caso tienen su origen en compras efectuadas en el comercio. En síntesis, señalaron que las enmiendas al Programa Lealtad implementadas en el año 2016, mucho antes de presentada la demanda, ampliaron el alcance del acuerdo de arbitraje para que cobijara cualquier disputa que los miembros del Programa de Lealtad tuviesen contra Best Buy relacionadas de cualquier forma con cualquier producto o servicio vendido y/o distribuido por Best Buy.[15]  Aseveran que la cláusula de arbitraje aplicable cuando se presentó la Demanda original disponía que cualquier disputa entre el miembro del Programa Lealtad y Best Buy debía ser resuelta mediante arbitraje individual.  Aludió a la entrada 64 de SUMAC, Anejo 2, Exhibit G, Cláusula 11.[16]

El Departamento de Hacienda, por su parte, en este punto aduce que las partes quedaron vinculadas con el acuerdo de

---

[15] Alegato de Best Buy, pág. 24.
[16] Alegato de Best Buy, pág. 21, inciso b y pág. 24.

arbitraje, lo que constituye la ley entre las partes.   Señaló que la cláusula contenida en el acuerdo otorgado entre Best Buy y los apelantes, a los efectos de que toda controversia, disputa o reclamo dirigido a Best Buy en relación con los productos o servicios admitidos de esa empresa, sería sometida a arbitraje obligatorio, resulta vinculante para estos, por lo que están obligados a cumplirla.  Mencionan que Best Buy sostuvo en forma vigorosa su postura en cuanto al arbitraje y no renunció a esa defensa.  Por tanto, ante la existencia de un convenio de arbitraje, no erró el foro primario al desestimar la demanda por falta de jurisdicción de la materia.

Revisamos.  Los apelantes no cuestionaron que pertenecían al programa de *My Best Buy*, el cual contenía una cláusula de arbitraje.  Mas bien, contienden que adquirieron en Best Buy un servicio de garantía llamado "Geek Squad Protection", sobre el cual cobró el IVU y no le aplica la cláusula de arbitraje.

Según pudimos constatar del expediente, desde, al menos desde septiembre de 2013 el programa de Lealtad de Best Buy, al cual estaban adscritos los demandantes-apelantes contenía una cláusula de arbitraje.[17]   En el 2016 Best Buy le notificó a sus miembros que los términos del programa de Lealtad fueron actualizados.[18] La cláusula de arbitraje, en lo pertinente, aludía a: "ANY DISPUTE WITH OR CLAIM AGAINSTBET BUY ARISING OUT OF OR RELATING IN ANY WAY TO ANY PRODUCTS OR **SERVICES SOLD** OR DISTRIBUTE BY BEST BUY…".[19]   Los apelantes reconocen que en la moción para compeler a arbitraje, Best Buy aludió a este lenguaje de la cláusula.

---

[17] Apéndice pág. 248 y 251.
[18] Apéndice pág. 259.
[19] Apéndice pág. 266, inciso 11.

Más adelante, al momento de presentarse la demanda en noviembre de 2019,[20] contenía una cláusula de arbitraje que indicaba lo siguiente:

11. Dispute Resolution By Binding Individual Arbitration

ANY DISPUTE INVOLVING YOU AND BEST BUY OR ANY OF ITS AGENTS SHALL BE RESOLVED THROUGH INDIVIDUAL ARBITRATION.

"Dispute" shall be interpreted broadly and include any claim or controversy arising out of or relating in any way to (1) your relationship with Best Buy whether based in contract, tort, statute, fraud, misrepresentation or any other legal theory; (2) the Program; and/or (3) **any products or services offered, sold, or distributed by Best Buy** including, but not limited to, the advertising of or the sales practices for such products and services. Dispute shall also include all disputes that arose before your enrollment in the Program and after the cancellation or termination of the Program, including any claims that are the subject of a purported class action litigation.

Como vemos, con el transcurso del tiempo y antes de presentada la demanda Best Buy fue ampliando la cláusula de arbitraje para cubrir los servicios cobijados por referida cláusula. Esto incluía disputas sobre compras de cualquier producto o servicio rendido. Conforme los términos y condiciones bajo el Programa de Lealtad al que estaban adscritos los demandantes, estos tenían la obligación de remitir sus reclamaciones al proceso de arbitraje. Ello es así pues su queja está directamente relacionada a la compra del servicio de garantía, al que alegan que se le cobró un impuesto que no procedía.

Aun si en la determinación de hechos número 6 el foro primario aludió a la última enmienda al programa, efectiva el 14 de febrero de 2023, ello no varía el resultado al que arribó de remitir la disputa al procedimiento de arbitraje. Como es sabido, nuestra función revisora acontece con respecto a la determinación del foro recurrido y no contra sus fundamentos. Como

---

[20] Apéndice pág. 276.

indicáramos, antes de esa enmienda de 2023, los términos y condiciones del Programa de Lealtad claramente pactaban de antemano que las disputas relacionadas con cualquier producto o servicio vendido por Best Buy fuese sometido ante un árbitro. Ante ello, lo adecuado era sujetarse a esa cláusula, por lo cual, damos por correcta y adecuada la determinación a la que llegó el TPI.    El segundo error tampoco fue cometido.

Por último, el apelado Best Buy nos solicita que, en la alternativa, modifiquemos la sentencia disponiendo la paralización de los procedimientos, en lugar de la desestimación, a tenor con la decisión del Tribunal Supremo Federal en Smith y que una vez modificada, la confirme.  En cuanto a este punto, Best Buy no nos informa ni argumenta la base jurídica exacta para lo que propone de manera alternativa reclamación.

## IV.

Por los fundamentos antes expresados, los que hacemos formar parte de esta sentencia, Confirmamos la sentencia emitida por el foro primario el 12 de enero de 2024.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones